UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN G. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16 CV 17 DDN |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before this court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Brian G. Walls is not disabled and, thus, not entitled to either disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq, or Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff was born on February 23, 1970. (Tr. 189, 196). He protectively filed his applications for DIB and SSI on October 10, 2012, eventually amending his disability onset date to the same date. (Tr. 214-15). Plaintiff claimed that the following conditions limited his ability to work: depression, bipolar disorder, attention deficit disorder, lupus,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Berryhill is hereby substituted for Carolyn W. Colvin as Acting Commissioner of Social Security and as the defendant in this action. 42 U.S.C. § 405(g) (last sentence).

and anxiety. (Tr. 219). Plaintiff's application was denied on January 9, 2013, and he requested a hearing before an administrative law judge ("ALJ"). (Tr. 11, 111-15, 118-19). A hearing was held in October 2014, where plaintiff and a vocational expert ("VE") testified. (Tr. 33-92). By decision dated November 7, 2014, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 11-23). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. *Id.* On January 14, 2016, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Consequently, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, he asserts that the ALJ erred in not giving his treating physician's opinion controlling weight, failed to fully develop the record, and failed to perform a proper credibility analysis of plaintiff's testimony. Plaintiff asks that the ALJ's decision be reversed or that the case be remanded for a new administrative hearing.

### A. **Medical Record and Evidentiary Hearing**

The court adopts plaintiff's unopposed statement of facts (ECF No. 18), as well as defendant's unopposed statement of facts. (ECF No. 23). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The court will discuss specific facts as they are relevant to the parties' arguments.

### B. **ALJ's Decision**

The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13). She also found that plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine, lumbago, discoid lupus, recurrent bilateral carpal tunnel syndrome, bipolar disorder, and attention deficit disorder. *Id.* However, the ALJ concluded that none of these impairments, individually or in

combination, met or equaled an impairment listed in the Commissioner's regulations. (Tr. 14-15). With respect to plaintiff's mental impairment, the ALJ found that the "paragraph B" and "paragraph C" criteria were not met, because plaintiff had no restrictions in activities of daily living; only mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no extended episodes of decompensation. *Id.*

The ALJ determined that plaintiff's impairments left him with the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," except that he can only occasionally lift and carry up to 20 pounds, can frequently lift and carry up to 10 pounds, can only stand or walk six hours in an eight-hour workday, and can sit six hours in an eight-hour workday. (Tr. 15). He cannot crawl or climb on ropes, ladders, or scaffolds, and he must avoid concentrated exposure to extreme cold, vibration, and work hazards like heavy machinery. *Id.* The ALJ also found that he must avoid ultraviolet light exposure, though fluorescent lights are permissible. *Id.* Finally the ALJ found that plaintiff can handle and finger bilaterally on a frequent basis. *Id.* The ALJ found that plaintiff had diagnoses for his impairments, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible." (Tr. 16-17).

The ALJ reasoned that the objective medical evidence did not substantiate plaintiff's allegations. (Tr. 17). Specifically, the ALJ observed that the record was "devoid of any evidence showing a significant degree of nerve compression, muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, abnormal coordination, or consistent gait disturbance." *Id.* The ALJ noted that plaintiff's physical examinations produced normal or mild findings, his impairments required no hospitalization, and his sole visit to the emergency room was to refill a prescription, not because the severity of his pain required such a visit. (Tr. 16-17, 650) (with the doctor stating, "really suspect this is tramadol withdraw[a]l . . . fairly classic presentation. Will give 10 tablets of tramadol to get him through"). The ALJ also considered plaintiff's activities of daily living to be inconsistent with his allegations of debilitating carpal

3

tunnel syndrome. (Tr. 18). He texts messages, uses a computer keyboard, does not drop objects, and is able to manipulate a cigarette out of its package and light it. *Id.* Ultimately, the ALJ decided that plaintiff may be experiencing some degree of pain, but that his physical impairments are addressed in the limitations of his RFC. *Id.*

As to plaintiff's mental impairments, the ALJ emphasized plaintiff's normal mental status examinations; normal appearance, behavior, affect, mood, thought, judgment, and insight; and documented good response to treatment. (Tr. 19). He also noted a number of inconsistent statements in the record that erode plaintiff's credibility. *Id.* For example, plaintiff reported to the ALJ that he did not play video games, yet he reported to mental health care providers that he played video games on a frequent basis. (Tr. 57, 736, 740, 745).

In terms of the medical opinions in the record, the ALJ explained that he gave "little weight" to plaintiff's treating physician, Mark Tucker, DO, because his opinion was inconsistent with his own medical records. (Tr. 20). For example, when plaintiff told Dr. Tucker he hurt his back while shoveling, Dr. Tucker showed him correct lifting techniques to avoid injuries while shoveling. (Tr. 697). As the ALJ noted, "[s]uch counsel is inconsistent with the functional limitations opined in the medical source statement." (Tr. 20).

The ALJ also gave the opinions of psychiatrists David E. Goldman, DO, and Lyle A. Clark, MD "little weight" because they were not supported by the medical evidence. *Id.* at 20-21. She noted in particular that their Global Assessment of Functioning ("GAF") scores[2] of 45 and 36, respectively, which indicate very serious psychological

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations. *Diagnostic & Statistical Manual of Mental Disorders* (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate some impairment in reality testing or communication or "major" impairment in social or occupational functioning; scores of 41 to 50 reflect "serious" impairment in these functional areas; scores of 51-60 reflect "moderate" impairment; and scores of 61 to 70 indicate "mild" impairment. However, in the fifth edition of the DSM, it was recommended that the GAF be dropped for several

4

symptoms, were of limited probative value because they were assigned during an initial evaluation. *Id.* She noted that GAF scores are generally considered "snapshots" of a plaintiff's abilities at the time of examination, and do not reflect his day-to-day capabilities or how treatment may control symptoms. *Id.*

The ALJ gave partial weight to the opinion of an examining prison doctor who assigned plaintiff a GAF score of 60, because it indicated the claimant was experiencing moderate psychological symptoms, which she found to be consistent with the medical evidence. *Id* at 21.

She gave no weight to the statement of a state agency psychologist, Stanley Hutson, Ph.D., because he concluded that there was insufficient evidence upon which to offer an opinion, when the plaintiff submitted additional records at a later date, at the hearing level. *Id.* The ALJ found these later records provided sufficient evidence to properly assess plaintiff's RFC. *Id.*

Finally, the ALJ relied on the testimony of the VE to find that there were jobs in significant numbers in the national economy that a person with plaintiff's RFC and age, education, and work experience could perform. (Tr. 21-23). Accordingly, the ALJ concluded that plaintiff was not disabled. *Id.*

## II. DISCUSSION

As stated, plaintiff argues that the ALJ erred by failing to accord controlling weight to the opinion of plaintiff's treating physician, failing to fully develop the record, and failing to make a proper credibility determination. The court disagrees.

### A. General Legal Principles

In reviewing the denial of Social Security disability benefits, the court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-*

---

reasons, including its conceptual lack of clarity and questionable psychometrics. DSM-5 at 16.

*Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in a death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 CFR § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Step Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

**B.      The ALJ Properly Accorded Little Weight to Plaintiff's Treating Physician**

An ALJ must give good reasons for the weight she apportions the opinions in the record. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Factors for evaluating opinion evidence include the relationship between a treating source and the claimant, including the length, nature, and extent of examination; the degree to which the source presents an explanation and evidence to support an opinion; how consistent the opinion is with the record as a whole; and the training and expertise of the source. *See* 20 C.F.R. §§ 404.1527 and 416.927; SSR 06-3p.

In this case, the ALJ gave "little weight" to plaintiff's treating physician, Dr. Mark Tucker, because she found his opinion to be inconsistent with his own medical records. (Tr. 20). Plaintiff argues that the ALJ should have afforded Dr. Tucker's opinion more weight, because treating physicians are generally able to provide the most "detailed, longitudinal picture" of the nature of a plaintiff's impairments. 20 C.F.R. § 404.1527(d)(2). Plaintiff relies on the Commissioner's commentary explaining that "all things being equal . . . we will always give greater weight to the treating source's opinion than to the opinions of non-treating sources even if the other opinions are also reasonable or even if the treating source's opinion is inconsistent with other substantial evidence of record." 56 Fed. Reg. 36,932, 36,935 (Aug. 1, 1991) (commenting on 20 C.F.R. § 404.1527(d)(2)). This is because treating sources typically have the most knowledge about their patients' conditions. *Id.*

However, Eighth Circuit jurisprudence on this topic holds that a treating physician's opinion will only be given controlling weight if it is supported by medically acceptable evidence and consistent with the record. *Andrews*, 791 F.3d at 928 (citations omitted). It "may be discounted or entirely disregarded where other medical assessments are supported by better or more thorough medical evidence." *Id.* (citations omitted). Similarly, when a treating source's examination notes are inconsistent with his or her opinion, the ALJ may decline to give that source controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

After treating plaintiff for approximately one and a half years, Dr. Tucker opined that plaintiff could not lift more than ten pounds, sit for more than two hours in a workday, or stand or walk for more than two hours in a workday. (Tr. 636-47, 659-63, 687-724, 756-68). The ALJ found these limitations to be inconsistent with Dr. Tucker's own assessments and treatment notes. (Tr. 20). Dr. Tucker made clinical observations of the full range of motion in plaintiff's extremities, normal lifting tests, negative straight leg raises (indicating no herniated disk),[3] and plaintiff's reports that pain medication was "working well." (Tr. 643, 700, 703, 709, 712). Additionally, when plaintiff hurt his back shoveling in July 2013, Dr. Tucker did not restrict plaintiff's lifting; instead, he simply educated plaintiff on proper lifting techniques to avoid injury when shoveling or lifting in the future. (Tr. 697).

The ALJ further noted that the objective medical evidence was inconsistent with Dr. Tucker's recommended limitations. (Tr. 20). Medical imaging revealed no significant nerve impingement in plaintiff's cervical and lumbar spine, only "mild" degeneration, and good disk spacing. (Tr. 691-92, 697, 709). Dr. Tucker himself observed that plaintiff's MRI scan did not reveal nerve impingement. (Tr. 709). Another examining doctor found plaintiff to have normal muscle strength and tone and negative straight leg raises, assessing plaintiff's low back pain as only a "2" on a scale of 1 to 10. (Tr. 671).

Finally, the ALJ determined that Dr. Tucker's opinion did not seem to rely on clinical findings or testing, but simply seemed to adopt plaintiff's subjective complaints. (Tr. 20, 659-63). Dr. Tucker's treatment notes for the day he completed his opinion state that plaintiff "tells me" his low back pain is causing him severe pain, plaintiff "tells me" that he can only lift or carry less than ten pounds, and that plaintiff "tells me" he has various sitting and standing limitations. (Tr. 765-68). Specifically, plaintiff told Dr. Tucker he could only stand and walk for no more than two hours in an eight-hour workday, sit for no more than two hours in a workday, and rest four times in a workday.

---

[3] *See, e.g.,* Cathy Speed, *Low Back Pain (ABC of Rheumatology)*, 328 British Med. J. 1119, 1119-1121 (2004), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC406328/.

8

(Tr. 766). After comparing these notes with Dr. Tucker's opinion, the ALJ concluded that Dr. Tucker's opinion was based not on his medical observations and findings, but on plaintiff's own allegations regarding his limitations. (Tr. 20).

Accordingly, the ALJ's decision to give Dr. Tucker's opinion little weight was supported by substantial evidence. Although he was plaintiff's treating physician, Dr. Tucker's opinion was inconsistent with much of the record, including Dr. Tucker's own treatment notes, and it was not supported by the objective medical evidence. Furthermore, it appears to have been based largely on plaintiff's subjective complaints rather than on objective medical evidence. The Eighth Circuit has held that an ALJ is entitled to give less weight to such an opinion. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014). While there may have been some evidence in the record to support Dr. Tucker's decision (Tr. 667), the ALJ's decision to give the opinion only little weight was supported by other, substantial evidence, and the court may not reverse "merely because substantial evidence would support a contrary outcome." *Johnson*, 628 F.3d at 992.

### C. The ALJ Fully Developed the Record

Plaintiff also argues that the ALJ failed to fully develop the record, in that the ALJ did not properly account for plaintiff's need to avoid ultraviolet light. Social Security hearings are non-adversarial, and the ALJ has a duty to develop the record fully and fairly, independent of the plaintiff's burden to prove his case. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); 20 C.F.R. § 404.1520(b). If the record is insufficient for the ALJ to determine whether the plaintiff is disabled, he or she must further develop the record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

At the hearing in this case, plaintiff's attorney submitted an article, a workplace accommodations webpage, and an article abstract stating that people with systemic lupus may be sensitive to fluorescent light as well as the sun. (Tr. 395-403). He and the ALJ asked the VE a series of questions about the impact a limitation on fluorescent light exposure would have on the jobs available to plaintiff. (Tr. 80-84). While this discussion may have been inconclusive, the ALJ did not err by failing to further develop the record

9

as to this issue. This is because the ALJ concluded that plaintiff only suffered from discoid lupus, not the more severe systemic lupus, and in any case, did not need a limitation on fluorescent lighting. (Tr. 13, 14, 18, 20). She noted no diagnostic testing to support Dr. Tucker's assessment that plaintiff's lupus had become systemic. (Tr. 20, 703). On the contrary, after testing, it was confirmed that plaintiff's lupus was not systemic. (Tr. 636). The ALJ further reasoned that plaintiff's physician only counseled plaintiff about "protection" from ultraviolet light exposure, and not "avoidance." (Tr. 18, 644). The ALJ also noted that there was no evidence that plaintiff's lupus disease activity actually increased with exposure to fluorescent lights, and plaintiff and doctors only ever reported limitations related to sunlight. (Tr. 18, 364, 367, 644, 702, 765).

Plaintiff argues that the ALJ should have developed the record "by submitting interrogatories to Dr. Tucker" or "by bringing in a medical expert on discoid lupus to review the file and explain the issue of exposure to fluorescent and UV light." (ECF No. 18 at 10-11). However, an ALJ need not seek additional medical evidence "if other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). As long as there is enough evidence to determine the effect of an impairment on a plaintiff's ability to work, then the ALJ need not further develop the record. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). When there is little evidence of an alleged impairment and "substantial evidence to the contrary," an ALJ can make an informed decision without having to further develop the record. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

As the ALJ noted, there is no medical source suggesting that plaintiff needs to avoid exposure to fluorescent light. (Tr. 18). Plaintiff himself reported that the only medical recommendation he had received was to "avoid direct sunlight" and work indoors. (Tr. 364, 367, 702, 765). The articles submitted suggest fluorescent light exacerbates systemic lupus, not discoid lupus, and further state that LED, halogen, and natural lighting can accommodate those with systemic lupus. (Tr. 395-403). The ALJ's determination that plaintiff did not suffer from systemic lupus and only needed to avoid direct sunlight is supported by substantial evidence in the record and was adequately

addressed by VE testimony. Accordingly, the ALJ was under no duty to further develop the record.

D. **The ALJ Properly Evaluated Plaintiff's Credibility**

Finally, plaintiff argues that the ALJ improperly evaluated his credibility. He asserts that the ALJ used "boilerplate language" instead of providing specific reasons for his determination that plaintiff's testimony was not credible. (ECF No. 18 at 11). Plaintiff relies on SSR 96-7p for this argument, which states that the ALJ must cite "specific reasons," supported by evidence in the record, for a credibility finding.[4] He also notes that the ALJ did not expressly discuss the *Polaski* factors. *See Polaski v. Heckler*, 739 F.3d 1320, 1321-22 (8th Cir. 1984).

Contrary to plaintiff's assertions, the ALJ articulated the regulatory factors for evaluating plaintiff's claims about the intensity, persistence, and limiting effects of his symptoms (Tr. 15-16), and she gave specific reasons for concluding plaintiff's claims were not supported. (Tr. 16-20). First, the ALJ found that the clinical and objective findings in the record were inconsistent with plaintiff's allegations of total disability. In terms of plaintiff's lower back pain, lumbar x-rays and MRIs showed "mild"

---

[4] While this SSR was rescinded by SSR 16-3p on March 16, 2016, it was still in force at the time of the ALJ's decision in November 2014. The superseding 2016 ruling rejects the use of the term "credibility," because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. However, in terms of the evaluation of symptoms, both rulings direct ALJs to consider all evidence in the record, and both incorporate the factors to be considered under regulations 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). As applied to this case, the rescission of SSR 96-7p would not appear to have any practical effect on the outcome. Under either ruling, an ALJ must point to specific reasons for the weight given to a plaintiff's subjective complaints. Many courts have chosen to apply this ruling retroactively because it clarifies rather than changes the administrative interpretation of the rules. *See, e.g., Mendenhall v. Colvin*, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016); *Vonderau v. Colvin*, 2016 WL 4435620, at *5, n. 2 (N.D. Ind. Aug. 23, 2016). However, because SSR 16-3p does not alter the rule that the ALJ must provide specific reasons for the weight accorded a plaintiff's subjective complaints, this court need not reach the issue of whether it applies retroactively.

degenerative changes and a "moderate" protrusion. (Tr. 691-92). Plaintiff had no nerve impingement in his lower back, and an x-ray showed good disc spacing and no narrowing of disc spaces. (Tr. 697, 709). Straight-leg raises were repeatedly negative, and lifting tests were normal. (Tr. 17, 643, 671, 700, 703, 709). As to plaintiff's neck complaints, while cervical x-rays revealed degenerative disc disease, and some mild nerve compression, they also showed normal alignment, natural fusion, and only mild height loss. (Tr. 46-47, 665, 667). An examining orthopedist noted "good active range of motion" in plaintiff's neck. (Tr. 17, 665). In terms of plaintiff's wrist and hand complaints, an electromyography study showed neuropathies in his hands possibly consistent with carpal tunnel syndrome. (Tr.666, 90). However, hospital records reflected normal range of motion and strength in his fingers. (Tr. 678). Responding to complaints of numbness in his left hand, a doctor found it to be neurovascularly intact. (Tr. 665). Additionally, according to plaintiff, a carpal tunnel specialist did not think that operatory intervention was necessary. (Tr. 709). The ALJ found that these were not the kind of testing results one would expect given plaintiff's allegations of debilitating pain. (Tr. 18).

The ALJ also observed that plaintiff's conservative treatment history was inconsistent with his allegations of total disability. (Tr. 18). As the ALJ noted, plaintiff's treatment for his allegedly disabling pain consisted of osteopathic manipulation, medication management, and recommendations that he stop smoking cigarettes. (Tr. 18, 52, 643, 650, 672, 697, 708-09, 712). Despite claiming debilitating back pain, plaintiff denied ever needing physical therapy or home exercises to strengthen his back. (Tr. 18, 52, 669). He refused epidural steroid injections because he is afraid of needles. (Tr. 52). He did not require any surgeries, nerve blocks, or other treatment. (Tr. 18, 669). There is also no evidence that he required a cane, brace, or other assistive device for support while standing or walking. (Tr. 18, 669). As for plaintiff's hand and wrist issues, an examining specialist informed plaintiff that surgery was unnecessary and recommended that plaintiff continue conservative treatment and stop smoking. (Tr. 18, 709). The record does not reflect that plaintiff received any more substantial treatment for his neck, back, or hand

12

pain. (Tr. 18, 52, 643, 650, 672, 708-09, 712); *see Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding that the ALJ properly considered the claimant's treatment history of exercises and medication as relatively conservative).

Moreover, and as the ALJ noted, the record reflects that plaintiff's pain improved with treatment. (Tr. 18, 643, 697, 712). Approximately seven months prior to the hearing, plaintiff told his treating doctor that pain medication was "working well." (Tr. 712). He also reported "good results" from osteopathic manipulations on his neck and back. (Tr. 18, 643, 697). In January 2014, a pain management specialist rated plaintiff's pain as only a "2" on an ascending scale of 1 to 10. (Tr. 671). *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (holding that if a claimant's pain is controlled by treatment or medication, it is not considered disabling).

Finally, the ALJ found plaintiff's activities to be inconsistent with his allegations of total disability. Plaintiff reported debilitating back and neck pain since October 2012, but he irritated his back shoveling in July 2013. (Tr. 697). The ALJ properly found this strenuous activity to be inconsistent with plaintiff's allegations of disabling pain. (Tr. 18). Plaintiff also drove daily without apparent difficulty. (Tr. 19, 40, 737, 745). He can shop for groceries and cook meals independently, and he has no problems doing the laundry. (Tr. 19, 58, 733). As to plaintiff's allegations of hand numbness, his daily activities also belie the intensity alleged. Plaintiff testified he can send telephone text messages and use a computer for one to two hours per day. (Tr. 19, 56). He denied having any hand problems while using either a computer or a cell phone. (Tr. 57). He has not reported any problems with dropping objects, and he can take a cigarette out of its package and light it without incident. (Tr. 18, 49). He also reported playing video games after his alleged onset date, contrary to his hearing testimony. (Tr. 57, 736, 740, 745-46). Such inconsistencies between a claimant's subjective complaints and daily activities undermine his claims of disabling pain and support denial of benefits. *Medhaugh v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

The ALJ pointed to each of these specific reasons in her decision regarding the credibility of, or the weight given to, plaintiff's subjective complaints. Her evaluation was based on the entire record, reflects consideration of the appropriate factors, and is supported by substantial evidence. Accordingly, it was not error.

## III. **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 13, 2017.